# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JEREMY SPENCER,**

   **Plaintiff,**

 **v.**         **Civil Action 2:25-cv-780**
              **Judge Michael H. Watson**
              **Magistrate Judge Chelsey M. Vascura**

**NICHOLE TILTON,** *et al.*,

   **Defendants.**


## REPORT AND RECOMMENDATION

   Plaintiff, Jeremy Spencer, a Kentucky resident proceeding without the assistance of counsel, sues several Ohio state and county law enforcement agencies and officers under 42 U.S.C. § 1983 for violation of his federal constitutional rights and for violations of various Ohio constitutional and statutory provisions. Plaintiff has submitted a request to proceed *in forma pauperis*. (ECF No. 1.) The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

   This matter is also before the Court for the initial screen of Plaintiff's Amended Complaint (ECF No. 6) as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons below, the undersigned **RECOMMENDS** that the Court **DISMISS**

Plaintiff's federal claims under § 1915(e)(2)(B) for failure to state a claim on which relief can be granted. It is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in accordance with 28 U.S.C. § 1367(c)(3), and that those claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## I.      BACKGROUND

On May 1, 2024, Plaintiff was shooting at the Zaleski State Forest shooting range when he was approached by Defendant Nichole Tilton, a law enforcement officer of the Ohio Department of Natural Resources ("ODNR"). Tilton placed Plaintiff under arrest for aggravated menacing, stemming from Plaintiff's alleged harassment of loggers in the area. Plaintiff disputed that he had engaged in any harassment. Tilton then confirmed with her dispatcher that Plaintiff had an outstanding arrest warrant in Vinton County, Ohio, arising from Plaintiff's failure to appear at a traffic violation proceeding. Tilton informed Plaintiff that a Vinton County Sheriff's deputy was on his way to take Plaintiff into custody. About this time, Defendant Jeffrey Thompson, another ODNR law enforcement officer, arrived on the scene. Thompson stayed with Plaintiff while Tilton retrieved Plaintiff's property, including a firearm, from a nearby bench. Then Defendant Collin Remy, Deputy Sheriff for Vinton County, Ohio, arrived and switched out Tilton's handcuffs with his own. Remy performed a pat down of Plaintiff.

Tilton informed Plaintiff that his vehicle would be towed and that she would conduct an inventory search of the vehicle. Plaintiff had several firearms in the vehicle, which Tilton said would be confiscated. Thompson asserted that Plaintiff had a felony record, which Plaintiff disputed. Plaintiff admitted that he had been charged with assault, but that he had not been convicted. Defendants nevertheless told Plaintiff that he was being arrested on the additional charge of possessing firearms as a felon.

2

Some weeks later, on May 18, 2024, Plaintiff returned to Vinton County to retrieve his vehicle. On examining the vehicle, Plaintiff noticed that several religious items were missing, including "2 black bear hides, 1 black bear skeleton paw necklace with genuine turquoise stone beads, 1 black fox headdress with snapping turtle skull attached, 1 Medicine pouch containing various crystal stones, 1 bear skull with all undamaged teeth, 1 sterling silver bracelet containing 9 black stones, 1 sterling silver bracelet containing 12–14 genuine turquoise stones." (Am. Compl. ¶ 72, ECF No. 6.) Plaintiff also noted that several firearms and some ammunition were missing. After calling Tilton several times without resolution, Plaintiff eventually regained his missing possessions on August 27, 2024, at an ODNR field office. "To the best of his knowledge [Plaintiff] received everything back but is unsure as he was not present during the seizure nor provided an inventory list." (*Id.* at ¶ 80.)

Plaintiff commenced this action on July 14, 2025, suing Tilton, Thompson, Remy, ODNR, the Vinton County Sheriff's Department, and Vinton County Sheriff Ryan Cain. (ECF No. 1.) Plaintiff amended his Complaint on August 14, 2025, to add ODNR Lieutenant Christopher Dotson, ODNR Captain Harry Moore, ODNR Lieutenant Pat Brown, ODNR Chief of Division of Parks and Watercraft Glen Cobb, ODNR Director Mary Mertz, the State of Ohio, Vinton County, and the President of the Vinton County Board of Commissioners as Defendants. (ECF No. 6.)

Plaintiff's Amended Complaint sets forth 11 counts, asserting that Defendants violated Plaintiff's First, Second, Fourth, Sixth, and Fourteenth Amendment rights, violated the Religious Freedom Restoration Act, and violated ten different Ohio constitutional and statutory provisions. As relief, Plaintiff seeks compensatory and punitive damages, declaratory relief declaring Defendants' actions unconstitutional, injunctive relief to prevent further constitutional violations,

the costs of this action including attorney's fees, and an order requiring the removal and deletion

of Plaintiff's biometric data from law enforcement databases.

## II.    STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to

"lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In

doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from

filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the

statute, which provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid,
> the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte*

dismissal of an action upon the Court's determination that the action is frivolous or malicious, or

upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the

basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). See also

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule

8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III.  ANALYSIS

**A.  Plaintiff cannot prevail on his claims for damages against the State of Ohio, ODNR, or its employees in their official capacities, or his claims for declaratory and injunctive relief against any Defendant.**

As an initial matter, certain types of Plaintiff's requested relief are unavailable to him. First, to the extent that Plaintiff seeks damages against the State of Ohio, ODNR (an

5

instrumentality of the State of Ohio), or against any ODNR employees in their official capacities, those claims must be dismissed under the doctrine of sovereign immunity. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000). A suit against a state official in his or her official capacity is "not a suit against the official but rather is a suit against the official's office," and is therefore "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted). None of these exceptions apply to Plaintiff's Complaint. First, "Ohio has not waived sovereign immunity in federal court." *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Second, "Section 1983 does not abrogate Eleventh Amendment immunity." *Boler*, 865 F.3d at 410 (citing *Will*, 491 U.S. at 66). Third, the *Ex Parte Young* doctrine applies only when a plaintiff brings "claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler*, 865 F.3d at 412. Plaintiff's claims for compensatory and punitive damages fall outside the scope of *Ex Parte Young*. Accordingly, any damages claim against the State of Ohio, ODNR, and any official-capacity damages claims against ODNR employees must be dismissed.

Second, Plaintiff's claims for declaratory and injunctive relief (against all Defendants) must be dismissed. "When seeking declaratory and injunctive relief, a plaintiff must show actual

6

present harm or a significant possibility of future harm in order to demonstrate the need for preenforcement review." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). In other words, "[p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Plaintiff does not allege any ongoing or likely future violations of his constitutional rights. His claims for declaratory judgment and injunctive relief must therefore be dismissed.

**B.    Plaintiff cannot prevail on his federal individual-capacity claims against the ODNR supervisory employees.**

Plaintiff's individual-capacity claims against the ODNR supervisory employees (ODNR Lieutenant Christopher Dotson, ODNR Captain Harry Moore, ODNR Lieutenant Pat Brown, ODNR Chief of Division of Parks and Watercraft Glenn Cobb, and ODNR Director Mary Mertz) must be dismissed for failure to allege these Defendants' personal involvement in Plaintiff's injuries. To prevail on a § 1983 claim, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To establish the second element, a plaintiff must show "personal involvement" by the defendant. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior.*" *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up). Plaintiff's allegations do not meet this standard. Plaintiff alleges only that these supervisory employees were responsible for oversight and

training of officers Tilton and Thompson and that they took no corrective action regarding Tilton and Thompson's conduct. (Am. Compl. ¶ 86–87, ECF No. 6.) Plaintiff does not plausibly allege that the ODNR supervisory employees implicitly authorized, approved, or knowingly acquiesced in Tilton and Thompson's allegedly unconstitutional conduct. Plaintiff's individual-capacity claims against the ODNR supervisory employees must therefore be dismissed.

**C.     Plaintiff cannot prevail on his federal claims against the Vinton County Defendants.[1]**

Moreover, Plaintiff has not stated a claim against the Vinton County Defendants (Vinton County, the Vinton County Sheriff's office, Vinton County Sheriff Ryan Cain, Vinton County Deputy Sheriff Colin Remy, and the President of the Vinton County Board of Commissioners). To begin with, the Vinton County Sheriff's Office is not an appropriate Defendant because, as a county department, it is not *sui juris*—that is, it lacks the capacity to be sued. *See, e.g.*, *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (affirming district court's holding that sheriff's department, as arm of the county, is not *sui juris*). Plaintiff's claims against the Vinton County Sheriff's Office must therefore be dismissed.

But even considering Plaintiff's claims against Vinton County itself (the appropriate municipal Defendant), Plaintiff's claims against the County must be dismissed. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) ("To

---

[1] This discussion excludes individual-capacity claims against Defendant Vinton County Deputy Sheriff Colin Remy, which will be discussed below. Moreover, Plaintiff specifies that the President of the Vinton County Board of Commissioners is sued only in his official capacity (Am. Compl. ¶ 12, ECF No. 6); accordingly, the Court does not consider any possible individual-capacity claims against the Board President.

state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom.") (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017)). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)). Here, Plaintiff alleges that each of Defendant Remy's actions (e.g., arresting Plaintiff without a warrant, disabling his body-worn camera, seizing property without notice) were taken pursuant to official policies, customs, and practices of the Vinton County Sheriff's Office, but he does so only in a conclusory manner. (*See* Am. Compl. 13, ECF No. 6.) His allegations that the President of the Vinton County Board of Commissioners was responsible for ensuring proper training of Remy, but failed to do so, resulting in "a known and ongoing pattern of unconstitutional conduct that was the moving force behind Plaintiff's injuries" are similarly conclusory. (*Id.* at 10.) That is, "[h]e offers only . . . bare legal conclusions which the Court properly disregards." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 651 (S.D. Ohio 2023) (dismissing a claim for *Monell* liability due to conclusory allegations); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (dismissing a claim for *Monell* liability because it was "simply too conclusory to survive"). Plaintiff therefore has not plausibly alleged that Remy's actions were taken pursuant to a custom or policy of Vinton County, or that Vinton County failed to properly train its employees, such that *Monell*

liability would be available. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's claims against Vinton County must be dismissed.

Further, Plaintiff cannot prevail on his official-capacity claims against Vinton County Sheriff Ryan Cain, Deputy Sheriff Collin Remy, or the President of the Vinton County Board of Commissioners. A suit against a government official in his or her official capacity is "not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). But, as just discussed, Plaintiff has not stated a claim against the relevant entities (Vinton County or the Vinton County Sheriff's Office). Plaintiff's official-capacity claims against Vinton County Sheriff Ryan Cain, Deputy Sheriff Collin Remy, or the President of the Vinton County Board of Commissioners must therefore be dismissed.

Finally, just as with the ODNR supervisory employees, Plaintiff's individual-capacity claim against Vinton County Sheriff Ryan Cain must be dismissed for failure to allege Cain's personal involvement in Plaintiff's injuries. As discussed above, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson*, 556 F.3d at 495 (cleaned up). Plaintiff's allegations do not meet this standard. Plaintiff alleges only that Cain was responsible for oversight and training of Deputy Remy and that Cain took no corrective action regarding Remy's conduct. (Am. Compl. ¶ 88, ECF No. 6.) Plaintiff does not plausibly allege that Cain implicitly authorized, approved, or knowingly acquiesced in Remy's allegedly unconstitutional conduct. Plaintiff's individual-capacity claim against Defendant Cain must therefore be dismissed.

**D.     Plaintiff cannot prevail on his federal individual-capacity claims against the remaining Defendants.**

All that remains are Plaintiff's individual-capacity claims for compensatory and punitive damages against Tilton, Thompson, and Remy. The undersigned first considers Plaintiff's federal claims, which are Counts 1 through 7 of Plaintiff's Complaint. Count 1 is styled as a claim under 42 U.S.C. § 1983 which then lays out violations of the First, Second, Fourth, and Fourteenth Amendments.[2] Counts 2 through 5 are individual claims under each of the First, Second, Fourth, and Fourteenth Amendments. As a result, Count 1 is redundant with Counts 2–5. Count 6 advances a claim under the Religious Freedom Restoration Act. Count 7 is limited to *Monell* liability and therefore must be dismissed as discussed above. Thus, the undersigned will consider each of Counts 2 through 6.

**1.     Plaintiff cannot prevail on his claims for violation of his First Amendment rights or violation of the Religious Freedom Restoration Act (Counts 2 and 6).**

Plaintiff asserts that his First Amendment right to free exercise of religion and the Religious Freedom Restoration Act ("RFRA," 42 U.S.C. § 2000bb-1) were violated when Defendants seized several religious items from his vehicle. However, both the Free Exercise clause of the First Amendment and the RFRA require a showing that the government's actions placed a substantial burden on the practice of his religion. *See Wilson v. N.L.R.B.*, 920 F.2d 1282,

---

[2] Plaintiff also makes a passing reference in Count 1 to his Sixth Amendment right to counsel "during custodial interrogation and transport." (Am. Compl. 16, ECF No. 6.) But Plaintiff's allegations reflect that he refused to answer any of Tilton's, Thompson's, or Remy's questions without a lawyer present. (*Id.* at ¶¶ 7, 12, 16, 46.) Further, the right to counsel attaches not on arrest, but only on "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008); *see also Texas v. Cobb*, 532 U.S. 162, 169 n.2 (2001) (even prior to attachment of Sixth Amendment right to counsel, suspects retain the right to refuse police questioning under *Miranda v. Arizona*, 384 U.S. 436 (1966)). Thus, to the extent that Plaintiff asserts a Sixth Amendment claim, that claim fails.

1290 (6th Cir. 1990) ("[T]o establish a violation of the free exercise clause an individual must first show that the government has placed a substantial burden on the practice of his religion."); *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 589–90 (6th Cir. 2018) (an RFRA plaintiff must "allege a substantial burden by the Government on Plaintiffs' religious exercise" and must "allege at least that the Government has placed substantial pressure on an adherent to modify his behavior") (cleaned up).

Here, Plaintiff has alleged that he was denied possession of several religious items when Defendants seized those items from his vehicle, and that he retrieved those items a few months later. He does not allege, in more than a conclusory fashion, that his free exercise of religion was burdened by the seizure of these items. He does not, for example, allege that he was prevented from practicing his religion or that he faced substantial pressure to modify his behavior due to the absence of the seized items. Plaintiff therefore has not stated a claim under either the First Amendment or the RFRA. *See Meeks v. Larsen*, 611 F. App'x 277, 287 (6th Cir. 2015) (plaintiff failed to plead a free-exercise claim when he had "not pled any facts indicating that the seizure of specific religious materials in this case placed a substantial burden on the practice of his religion") (cleaned up). Plaintiff's First Amendment and RFRA claims must therefore be dismissed.

### 2. Plaintiff cannot prevail on his claims for violation of his Second Amendment rights (Count 3).

Plaintiff complains that Defendants' seizure of his firearms[3] violated his Second Amendment right to bear arms. But seizure of weapons fails to constitute an infringement of the

---

[3] Plaintiff asserts that he "does not have fire arms but instead Arms as stated in the second amendment." (Am. Compl. ¶ 74, ECF No. 6.) Plaintiff's description of the weapons, however, falls within the ordinary definition of "firearms." (*Compare id.* at ¶ 73 (listing an AR-15, a .17 HMR rifle, a 9mm pistol, and an antique .38 revolver) *with* Merriam-Webster.com Dictionary,

right to bear arms, so long as the seizure was proper under the Fourth Amendment's proscription against unreasonable searches and seizures. *See Houston v. City of New Orleans*, No. CV 09-4245, 2010 WL 11508975, at *3 (E.D. La. Dec. 10, 2010), *aff'd*, 675 F.3d 441 (5th Cir. 2012) (vacated and remanded on other grounds) (seizure of firearms pursuant to a lawful arrest does not violate the Second Amendment); *Ollie v. City of DeSoto*, No. 3:22-CV-1261-S-BN, 2023 WL 4154445, at *4–5 (N.D. Tex. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 4982780 (N.D. Tex. Aug. 3, 2023) (noting that plaintiff's "claim for violation of the Second Amendment—that, when property was seized from him, he was denied of the right to keep and bear arms—is better understood as a Fourth Amendment violation"). The undersigned will therefore consider the constitutionality of the initial seizure of Plaintiff's firearms in the Fourth Amendment analysis, below.

Moreover, Defendants' retention of Plaintiff's firearms is also not a Second Amendment violation. Although Plaintiff was denied possession of those four particular firearms, Plaintiff has not alleged that Defendants interfered with Plaintiff's ability to bear arms in general. *See*, *e.g.*, *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (no Second Amendment violation when "[t]he defendants did not prohibit [the plaintiff] from retaining or acquiring other firearms"); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005) ("[T]he 'right to bear arms' is not a right to hold some particular gun. Nothing in plaintiff's pleading or other papers suggests that any action taken by defendants would prevent him from acquiring another weapon."). And to the extent Plaintiff alleges that Defendants interfered with his property interest in the firearms, that

---

https://www.merriam-webster.com/dictionary/firearm (last visited Aug. 19, 2025) (defining "firearm" as "a weapon from which a shot is discharged by gunpowder").

claim will be considered as part of the Fourteenth Amendment procedural due process analysis, below. Accordingly, Plaintiff's Second Amendment claims must be dismissed.

### 3. Plaintiff cannot prevail on his claims for violations of his Fourth Amendment rights (Count 4).

Plaintiff asserts that Defendants unreasonably seized his person by arresting him without a warrant in violation of the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. But arrests may be made without a warrant so long as the arresting officer has probable cause to believe that the suspect had committed a crime. *See, e.g., U.S. v. Mitchell*, 457 F.2d 513, 514 (6th Cir. 1972) ("[T]he issue is simply whether under the circumstances of this case probable cause existed to permit an arrest without a warrant."); *Gerstein v. Pugh*, 420 U.S. 103, 111, 113 (1975) ("The standard for arrest is probable cause, defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense" and "while the Court has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.") (cleaned up). An officer's probable cause determination is necessarily based on "acts and circumstances *within an officer's knowledge at the time of an arrest.*" *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (emphasis in original).

Here, Plaintiff was arrested for (1) aggravated menacing under Ohio Revised Code § 2903.21, (2) possessing weapons while under a disability under Ohio Revised Code § 2923.13, and (3) failing to appear for court proceedings arising from a 2023 Vinton County traffic violation. The Complaint's allegations do not suggest that the Defendants lacked probable cause to make these arrests. That is, Plaintiff has not alleged that the officers lacked a reasonable belief

14

that Plaintiff had committed the offenses for which he was arrested. Plaintiff alleges that he verbally disputed the accusations of menacing and possession under a disability with the arresting officers. But verbally disputing the charges does not vitiate probable cause. In particular, although Plaintiff denied that he had been *convicted* of any felony charges, he does not allege that he was not under *indictment* for felony charges, which would permit a finding that he was under a disability for purposes of Ohio Rev. Code § 2923.13(A)(2). Further, as to his failure to appear for proceedings arising from a traffic violation, Plaintiff does not even allege that he denied at the time of the arrest that he failed to appear as required. Rather, Plaintiff alleges that he "later discovered" that the underlying traffic citation contains a non-existent date of the offense ("11/31/2023"), which Plaintiff contends renders the citation invalid. (Am. Compl., 18, ECF No. 6, PAGEID #26.) There is, therefore, no indication that the Defendants lacked probable cause to arrest Plaintiff on May 1, 2024. As a result, Defendants' failure to obtain a warrant prior to arrest did not violate the Fourth Amendment.

Plaintiff also complains that "[p]rior to being placed in jail [Plaintiff] was not taken before a judge or magistrate." (Am. Compl. ¶ 57, ECF No. 6.) But judicial determination of probable cause is not required immediately upon arrest; rather, the Supreme Court of the United States has determined that an appearance before a judicial officer within 48 hours of arrest will generally comport with the Fourth Amendment. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). And Plaintiff does not allege that an unreasonable amount of time passed before he was brought before a judicial officer. The failure to immediately obtain a judicial probable cause determination, therefore, also fails to give rise to a Fourth Amendment violation.

There being no indication that Plaintiff's arrest was unlawful, there is also no indication that Defendants' inventory search of Plaintiff's vehicle and seizure of its contents was unlawful.

Although, in general, "[t]he Fourth Amendment proscribes warrantless searches and seizures," "the warrant requirement is subject to certain exceptions." *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "One recognized exception" is an "inventory search." *Id.* "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (citation omitted). "In order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must be conducted according to standard police procedures." *Id.* at 659 (citation omitted).

Here, Defendants impounded Plaintiff's vehicle upon his arrest and secured valuable items in the form of Plaintiff's firearms and religious items, which the Fourth Amendment permits. *See Hockenberry*, 730 F.3d at 658–59. Plaintiff's only complaint about the inventory search itself is that Defendants did not present Plaintiff with the written, standardized policy that the officers followed when conducting the search or provide him with a written inventory of the vehicle's contents. But precedent does not require that officers *provide* a copy of the inventory search policy or an inventory to arrested individuals; the caselaw requires only that the search be *conducted pursuant* to a standardized policy. Plaintiff's allegations do not plausibly allege that the inventory search was unlawful.

In sum, all of Plaintiff's Fourth Amendment claims must be dismissed.

### 4.     Plaintiff cannot prevail on his claims for violation of his Fourteenth Amendment rights (Count 5).

Plaintiff contends that his unlawful arrest and seizure of his property deprived him of liberty and property interests without the due process required by the Fourteenth Amendment. In *Paratt v. Taylor*, the United States Supreme Court held that the existence of adequate post-

16

deprivation state remedies eliminates any due process claim arising from the negligent deprivation of property. 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986) and *Hudson v. Palmer*, 468 U.S. 517 (1984). The *Hudson* Court extended *Parratt's* application to all § 1983 due process claims involving deprivation of property, regardless of whether the deprivation is negligent or intentional. *Hudson*, 468 U.S. at 533–36. *Cf. Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004) ("If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury."). Following *Parratt* and *Hudson*, the Sixth Circuit held that in a § 1983 case "claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir. 1983). The Sixth Circuit later extended this rule to procedural due process claims involving deprivation of a liberty interest. *See Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985). When a plaintiff fails to plead inadequacy of state remedies, dismissal for failure to state a claim is appropriate. *See, e.g.*, *Gibbs v. Hopkins*, 10 F.3d 373, 377–78 (6th Cir. 1993) (dismissal of procedural due process claim upheld when the plaintiff had "not pled or shown that [the state] judicial remedies are inadequate . . . ."); *Ruiz v. Fisher*, No. 96-4212, 1998 WL 661139, at *5 (6th Cir. Sept. 2, 1998) (concluding that the plaintiff had failed to state a claim of either intentional or negligent deprivation of property where he had not pled "that state remedies for redressing the wrong [were] inadequate").

Here, Plaintiff has not alleged that available state remedies (such as the state-law torts of malicious prosecution, abuse of process, false arrest, or conversion) would not adequately redress his injuries. *See Fox*, 176 F.3d at 349 (citing *Hudson*, 468 U.S. at 534–36) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process

17

Clauses."). Accordingly, Plaintiff has failed to state a Fourteenth Amendment procedural due process claim.

**E.  Because Plaintiff has not stated any federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims (Counts 8 through 20).**

Finally, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state-law claims for violation of various Ohio constitutional and statutory provisions. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted). Here, Plaintiff's allegations related to the Ohio Constitution and the Ohio Revised Code fail to provide a basis for a claim over which this Court has original jurisdiction. "The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for federal-question jurisdiction, and § 1332, which provides for diversity of citizenship jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (cleaned up). Federal-question jurisdiction is implicated when a plaintiff pleads a claim "arising under" the federal laws or the United States Constitution. *Id.* (citation omitted). For a federal court to have diversity jurisdiction under § 1332(a), there must be complete diversity, meaning that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Plaintiff's claims under the Ohio Constitution and the Ohio Revised Code pertain squarely to state law and do not arise under federal laws or the United States Constitution. Nor has Plaintiff alleged that he and Defendants are citizens of different states. Thus, Plaintiff has

failed to plausibly allege facts on which the Court could rely to conclude that this Court has original subject-matter jurisdiction over his state-law claims. Because the undersigned is recommending dismissal of all of Plaintiff's federal claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and that it dismiss any such claims without prejudice to filing in state court.

## IV.    DISPOSITION

For these reasons, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 1) is **GRANTED**. The undersigned **RECOMMENDS** that Plaintiff's federal claims be **DISMISSED** for failure to state a claim on which relief can be granted, and that Plaintiff's Ohio claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE